# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**THEODORE TOPOLEWSKI**                    **CASE NO.  3:23-CV-00258**

**VERSUS**                                 **JUDGE TERRY A. DOUGHTY**

**POLICE JURY ET AL**                      **MAG. JUDGE KAYLA D. MCCLUSKY**

## MEMORANDUM RULING

Pending before the Court are two Motions for Summary Judgment [Doc. Nos. 55, 64]. The first Motion for Summary Judgment [Doc. No. 55] is filed by Madison Parish Service District Hospital Board of Commissioners ("Defendant Hospital Board") and Madison Parish Service District Hospital ("Defendant Hospital") (collectively "Defendants"). The second Motion for Summary Judgment [Doc. No. 64] is filed by RSUI Indemnity Company ("RSUI")[1], who adopts Defendant Hospital Board and Defendant Hospital's Motion for Summary Judgment [Doc. No. 55]. Defendant Hospital Board, Defendant Hospital, and RSUI are collectively referred to as "all Defendants" throughout the ruling. Plaintiff, Theodore Topolewski ("Topolewski" or "Plaintiff"), filed an omnibus Opposition [Doc. No. 78], and Defendants have filed two Replies [Doc. Nos. 81, 86].

For the reasons set forth herein, Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Topolewski, a Caucasian male, filed the instant employment suit against all Defendants on February 27, 2023.[2] Topolewski filed a first amended and supplemental complaint and a second

---

[1] Defendant Hospital is a named insured under an insurance policy issued by RSUI.
[2] [Doc. No. 1]

amended and supplement complaint.[3] Throughout the complaints, Topolewski asserts several causes of action sounding in race-based discrimination, retaliation, breach of contract, and civil conspiracy.

The Madison Parish Service District Hospital was created by the Madison Parish Police Jury, per the authority granted by La. R.S. § 46:1051, to operate the Madison Parish Hospital in Tallulah, Louisiana. The Hospital Service District, a political subdivision of the State of Louisiana is governed by a board of five commissioners (Hospital Board), each appointed by the Police Jury.

On April 7, 2014, Plaintiff and the Hospital entered into an employment agreement.[4] The employment agreement was extended several years. Plaintiff served as Director/Chief Executive Officer ("CEO") of the Hospital until his discharge on October 14, 2022.[5] The employment agreement in effect at the time of Plaintiff's termination was set to expire on February 28, 2023.[6] Plaintiff's employment agreement with the Hospital contained the following provisions regarding termination:

> 4.4.   Termination by Either Party for Cause.  Either party may terminate this Agreement, for cause, if the other party breaches a material term of this Agreement and such breach is not cured within seven (7) days of receipt of written notice of such breach by the other party. "Cause" is defined to include, but not be limited to, the following:

> 4.4.1.  Refusal by the CEO to regularly report and/or diligently perform the duties required by this Agreement;

> 4.4.2.  CEO's violation of a patient's confidentiality rights set forth in this Agreement or Louisiana or federal law.

> 4.4.3.  CEO's violation of the Nondisclosure of Hospital Information as set forth in this Agreement; or

> 4.4.4.  Hospital's failure to pay compensation as set forth herein.

---

[3] [Doc. No. 10, 19].
[4] [Doc. No. 78-2].
[5] [Doc. No. 78-3, p. 3].
[6] [Doc. No. 55-12, p. 24].

4.5.    Removal of CEO by Board Vote.  Hospital may remove CEO by a majority vote of the Board at any regular meeting for which the removal appears on the agenda or any special meeting after due notice if, at the Board's discretion, CEO is found incompetent, inefficient, or unworthy during the term of a written employment agreement, provided that the Board shall provide CEO with written warning that his conduct is unacceptable and a reasonable opportunity to correct the indicated deficiencies prior to the Board's termination of the Agreement.  In the event of termination under this provision, CEO will receive a severance payment equal to two (2) months' salary.

4.6.    Immediate Termination by Board.  The Board may terminate this Agreement immediately upon notice to CEO upon occurrence of any of the following, which shall form the basis for termination of this Agreement:

4.6.1    CEO is convicted of a felony;

4.6.2    CEO dies or becomes disabled and incapable of performing the services contemplated by this Agreement; or

4.6.3    CEO engages in any act of omission that is harmful to the safe operation of the Hospital or is a threat to the health, safety, or welfare of the patients, staff and/or employees of the Hospital.

4.7    Obligations Prior to Termination.  Any such termination shall not effect either party's obligations arising prior to the effective date of termination.

On August 3, 2022, the Hospital's Chief Financial Officer ("CFO"), Robert Laurents ("Laurents"), informed Plaintiff that Latayatcha Ross ("Nurse Ross"), a licensed nurse practitioner employed by the Hospital, was falsifying medical records to obtain a contractual bonus.[7] Plaintiff's initial response to Laurents was to "let it go."[8] One day later, on August 4, 2022, Laurents and the business office manager informed Plaintiff that Nurse Ross falsified over one hundred and twenty (120) records.[9] Plaintiff requested samples of the records which allegedly showed their incompleteness.[10] Plaintiff contacted the Hospital's outside counsel, Sullivan Stolier Schulze, LLC

---

[7] [Doc. No. 55-5, p. 12].
[8] [Doc. No. 78-6, p. 3].
[9] [*Id.*].
[10] [Doc. No. 78-6, p. 4].

3

("Sullivan Stolier"), to request an internal investigation.[11] After conducting the internal investigation, Sullivan Stolier informed Plaintiff to terminate Nurse Ross immediately.[12]  On August 9, 2022, Plaintiff called a meeting with Defendant Hospital Chief Medical Officer – Dr. Lawrence Chenier, Nurse Ross' collaborating physician – Dr. Donald Perry, and Nurse Ross' administrative boss – Stacey Sandidge, to brief them of the situation.[13]

Nurse Ross admitted to submitting nearly sixty-six (66) incomplete medical records and was terminated.[14] The report was given to the Hospital on August 25, 2022, and corroborates Plaintiff's testimony.[15] The report also notes that immediate termination was warranted under her contract.[16]

On August 25, 2022, Plaintiff emailed a copy of the Sullivan Stolier report to Defendant Hospital Board.[17] At that time, the Defendant Hospital Board was made up of five members: Mary Trichell ("Trichell") – Chair, Thomas Leoty ("Leoty") – Vice Chair, Cole Norris ("Norris"), Calvin Washington ("Washington"), and Thomas Mitchell ("Mitchell"). [18] Trichell, Leoty, and Norris are Caucasian, and Washington and Thomas are African American. Plaintiff asked Washington his thoughts on the report, and Washington said that the attorney report was "false."[19] Nurse Ross reportedly "had a very nice personality," "her demeanor was very, very nice," and "she seemed to be a great person."[20] Plaintiff declared in his deposition that in addition to accusing Sullivan Stolier of making a false report, Washington used the word "racial" and clearly stated his

---

[11] [Doc. No. 55-5, p. 37].
[12] [Doc. No. 78-6, p. 4].
[13] [Doc. No. 55-5, p. 14].
[14] [*Id*. at 15].
[15] [Doc. No. 78-7, p. 1].
[16] [*Id*.].
[17] [Doc. No. 78-8].
[18] [Doc. No. 78-8, p. 1].
[19] [Doc. No. 78-12, p. 10]
[20] [*Id*. at p. 32]

intentions of gaining an African American majority board.[21] Plaintiff memorialized the conversation in an email to Trichell, despite Washington testifying that he does not recall saying such.[22]

## A. Board Meetings

On or around September 21, 2022, Mitchell emailed board agenda items for a meeting set for September 27, 2022.[23] The agenda listed a hearing for Nurse Ross' termination and removal of officers for cause.[24] Despite Mitchell's proposed agenda, Plaintiff emailed Chasity Whitaker ("Whitaker"), the Hospital's Board secretary, and stated that Nurse Ross' termination was not to be discussed.[25] Plaintiff forwarded Mitchell's email to Sullivan Stolier and wrote: "A silly document. I will not respond."[26] Plaintiff allegedly canceled the September 27, 2022, meeting.

Mitchell confronted Trichell at work where he allegedly raised his voice and demanded an explanation as to why Nurse Ross' termination discussion was taken off the agenda.[27] Trichell replied that the discussion was taken off after advice from the Hospital and the Board's legal counsel.[28] On or about September 27, 2022, two attorneys from the Fisher & Phillips firm – Andrew Baer and Michelle Anderson – traveled to the Hospital to "commence an investigation and speak to the Board in special session to provide legal guidance."[29]

On October 10, 2022, the police jury convened its regular meeting and voted to dismiss board members Trichell and Leoty as their terms had allegedly expired.[30]

---

[21] [Doc. No. 78-9].
[22] [Doc. Nos. 78-9; 78-12, p. 17-19].
[23] [Doc. No. 78-20, p. 4].
[24] [*Id*.].
[25] [Doc. No. 55-22, p. 1].
[26] [Doc. No. 55-24].
[27] [Doc. No. 78-21].
[28] [Doc. No. 78-10, p. 8-10].
[29] [Doc. No. 78-15, p. 2].
[30] [Doc. No. 55-29].

Plaintiff submitted evidence that before the dismissal of Trichell and Leoty, Mitchell requested a schedule of the board members' term dates from the police jury secretary, Margaret Drew ("Drew"), as opposed to the Defendant Hospital Board secretary, Whitaker.[31] Further, the police jury agenda for the October 10, 2022, meeting failed to adhere to the specific notice requirements regarding dismissal and appointee of members. Both Trichell and Leoty state in their deposition that they did not have any warning or notice that they had to submit written requests to the police jury to remain on the hospital board.[32] However, Mitchell and Washington were put on notice of the upcoming expiration of their term and wrote letters asking to be re-appointed.[33] The police jury unanimously voted to re-appoint both Mitchell and Washington, changing the hospital board from a Caucasian majority to an African American majority.[34]

On October 12, 2022, the amended board issued a notice of a special meeting to take place on October 14, 2022.[35] The special meeting's agenda included the following matters: "Board hearing for licensed contractor employee; Removal of Officers for cause; Salary reviews; Investigations into all personnel-related matters."[36]

## B. Removal of Plaintiff

On October 12, 2022, Plaintiff forwarded the email regarding the board's agenda notice to an attorney from Sullivan Stolier and claimed that he would not attend and "hopefully they will do me a favor and terminate my contract."[37] Plaintiff testified that he did not attend the meeting because the board was illegally constituted and called by no officers. Further, Plaintiff declared

---

[31] [Doc. No. 78-23].
[32] [Doc. Nos. 78-10, p. 9; 78-26, p. 2].
[33] [Doc. No. 57-2, p. 9].
[34] [Doc. No. 55-30].
[35] [Doc. No. 78-22].
[36] [Doc. No. 55-31].
[37] [Doc. No. 55-32].

that he feared for his safety due to the community's reactions regarding Nurse Ross' termination.[38] Jeanette Phillips, who was a housekeeper of the Hospital, testified in an affidavit that she observed Plaintiff on the day of his termination, "making trips back and forth, moving his things out of his office. He made trips out of the hospital, moving boxes and his things."[39] This allegedly led the Hospital Board to believe that Plaintiff abandoned his position.[40] Plaintiff presents deposition testimony that he removed his belongings because he was suspicious of the Hospital Board's intentions to terminate him.[41]

Finally, on October 14, 2022, the Hospital Board voted to remove Plaintiff as Hospital's CEO, effective immediately.[42] Plaintiff received the termination notice on October 17, 2022, with no reasoning provided.[43] Additionally, the Hospital Board reinstated Nurse Ross due to the absence of proof regarding the reason for her termination and hired Williams, Nurse Ross' attorney, to a newly created position at the Hospital.[44] Further, Doctor Donald Perry ("Dr. Perry"), an African American, was appointed as interim CEO and remained as such for two (2) years.[45]  On February 1, 2024, the Hospital hired permanent CEO, William Ermann ("Ermann"), a Caucasian male.

On July 12, 2024, Defendants filed the pending Motion asserting that the Court dismiss "all causes of actions collectively sounding in race based, retaliatory discrimination, unlawful conspiracy, breach of contract and the intentional infliction of emotional distress, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §1981, 42 U.S.C §1983, 42 U.S.C

---

[38] [Doc. No. 55-6, p. 16-18].
[39] [Doc. No. 55-15].
[40] [Doc. No. 55-2, p. 18].
[41] [Doc. No. 55-6, p. 22].
[42] [Doc. No. 55-35].
[43] [Doc. No. 78-31].
[44] [*Id*.].
[45] [*Id*.].

§1985, La. R.S. 23:301, et seq, La. R.S. 23:967, La. Civil Code article 1997, and Louisiana's code laws regarding the Intentional Infliction of Emotional Distress."[46] Plaintiff opposes.[47]

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

Under FED. R. CIV. P. 56(a), the court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

---

[46] [Doc. No. 55].
[47] [Doc. No. 78].

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence*." Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr¬McGee Oil and Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B. Analysis

### 1. Exhibits 16, 17, 34, 28, 7, 15

#### A. Exhibits 16, 17, and 34

In the Reply to Plaintiff's Opposition, Defendants argue that Exhibits 16, 17, and 34 (collectively the "newspaper articles") should not be considered as evidence because newspaper articles are inadmissible hearsay.[48] Plaintiff asserts that the newspaper articles are admissible pursuant to Federal Rule of Evidence 802(1). Under Federal Rule of Evidence 802(1), a present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Alternatively, Plaintiff argues that Federal Rule of Evidence 801(d)(1) exclusion applies because Blakely Bell ("Bell"), the author of the newspaper articles, was subject to cross-examination and is listed as a potential trial witness. Generally, newspaper articles are not proper summary judgment evidence to prove the truth of the facts that

---

[48] [Doc. No. 81, p. 2].

they report because they are inadmissible hearsay. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir.2005).

In *McCowan v. City of Philadelphia*, 603 F.Supp.3d 171 (E.D. Pa. 2022), the plaintiff argued that the city controller's op-ed was definitionally not hearsay because it was her prior statement and otherwise was admissible because she would testify at trial. The *McCowan* court held that "[I]t is not enough for the proponent to show that the speaker is currently available for cross examination at trial. Federal Rule of Evidence 801 defines 'hearsay' as 'a statement that ... the declarant does not make while testifying at the *current* trial or hearing.'" *Green v. United Parcel Service, Inc.,* 2020 WL 20337176 (citing FED. R. EVID. 801(c)) (emphasis added). The court thus denied the newspaper admission because the statement was made before the current trial, which is like the facts here. *See id.* As for the exclusion under 802(1), Plaintiff fails to provide the Court of precedent where a newspaper can fall under the present sense impression and the Court cannot find one either.

Thus, Exhibits 16 and 17 in their entirety are not admissible summary judgment evidence and will not be considered for this ruling.

Exhibit 34 constitutes an article regarding the reinstatement of Williams and an interview between Bell and Mitchell. Plaintiff argues that the statements made by Mitchell comprise statements made by an opposing party under Federal Rule of Evidence 801(d)(2). The Court agrees and finds that Federal Rule of Evidence 801(d)(2)(D) applies.

Mitchell's statements can be considered against the Defendant Hospital because Mitchell is an agent of the Hospital. *See Wilkerson v. Columbus Separate School Dist.*, 985 F.2d 815, 818 (5th Cir. 1993) (holding that members of the school board's statement were admissible because

the board members were agents of the school district). However, only the direct statements are admissible. Bell's written synopsis and own words are struck for the reasons set out above.

In *Jacobs v. LeBlanc*, 2015 WL 364170 at *4 (M.D. La. Jan. 26, 2015), *aff'd*, 639 F. App'x 252 (5th Cir. 2016), the court sustained the defendant's objection to a newspaper article where the then-defendant (LeBlanc) was quoted discussing prison conditions. At the time of the challenge, LeBlanc was not a current defendant in the case because he had been dismissed. *Id*. The court ruled that because there were no opposing party's statements quoted in the article, it was inadmissible hearsay. *Id*. Contrary to *LeBlanc*, here, Mitchell is considered an opposing party as he is an agent acting within the scope of his employment as a board member and the statements are offered against him. Federal Rule of Evidence 801(d)(2)(D) requires that the statement be made during the existence of the employment relationship. As to current employees, if the statement concerned a matter within the scope of employment, it would be deemed admissible. *Corley v. Burger King Corp.*, 56 F.3d 709, 710 (5th Cir.1995); *Davis v. Mobil Oil Exploration & Producing Se*., *Inc.,* 864 F.2d 1171, 1174 (5th Cir. 1989). Mitchell's quotes regarding Plaintiff's termination and pay would be admissible under the hearsay exclusion 801(d)(2)(d), because he was acting within his scope as chairman for the Board and Hospital.

Thus, the Court will consider Mitchell's quoted statements in Exhibit 34 as admissible summary judgment evidence.

### B.  Exhibit 28

Defendants argue that paragraphs 20, 21, and 22 of Whitaker's affidavit are inadmissible hearsay since Williams' statements "cannot pertain to the factual basis underlying the actual claims asserted" because the statements occurred after Plaintiff was terminated.[49] The Court disagrees.

---

[49] [Doc. No. 81, p. 2].

As relevance is the ultimate evidence standard, the fact that Williams was soliciting information on Plaintiff after his termination is relevant in evidence to support Plaintiff's underlying claims.

Thus, the Court will consider Whitaker's affidavit in Exhibit 28 as admissible summary judgment evidence.

### C. Exhibits 7 and 15

Defendants argue that the Sullivan Stolier and Fisher Phillips reports ("attorney reports") constitute attorney-client privilege documents that have already been ruled inadmissible by the Court, and alternatively, constitute hearsay.[50] Plaintiff correctly argues that this Court did not rule the attorney reports inadmissible but denied Plaintiff's motion to compel the depositions of the authors of the reports.[51] Further, Plaintiff states that to the extent the reports are attorney-client privileged, such has been waived because Defendants disclosed them voluntarily to Plaintiff, and the reports have been used extensively throughout the litigation without any objection as to privilege. Plaintiff further asserts that the reports are admissible for purposes other than to prove the truth of the matter asserted, such as the effect on the listeners.

Patently, a voluntary disclosure of information that is inconsistent with the confidential nature of the attorney-client relationship waives the privilege. *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988). Both reports were voluntarily given to Plaintiff during his employment and after termination.

Therefore, the Court will consider Exhibits 7 and 15 as admissible summary judgment evidence.

### 2. Title VII, 42 U.S.C § 1981, and Louisiana Employment Discrimination Claims Against All Defendants

---

[50] [Doc. No. 81, p. 2].
[51] [Doc. Nos. 66; 86, p. 7].

Plaintiff alleges three claims of race-based discrimination: Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C §1981, and Louisiana Employment Discrimination Act, La. R. S. 23:301, *et seq.* The same evidentiary framework—the Title VII framework—applies to each of Plaintiff's discrimination claims, so the Court begins there. *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). The only substantive difference is that § 1981 does not require exhaustion of administrative remedies, which is not at issue here. *Id.* at 227.

Title VII prohibits employers from discriminating against employees on a number of grounds, including race. 42 U.S.C.§ 2000. To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or circumstantial evidence. *Harris v. Drax Biomass Inc.,* 813 F. App'x. 945, 947 (5th Cir. 2020). Where, as here, the Plaintiff offers no direct evidence of intentional race discrimination, we analyze the claim under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas Corp.*, the plaintiff carries the burden to prove that (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class. 411 U.S. at 802; *see also Lee v. Kan. City S. Ry. Co*., 574 F.3d 253, 259 (5th Cir. 2009). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802.

If the employer can show a legitimate, nondiscriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or that the

plaintiff's protected status was another motivating factor for the decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

A. *Prima Facie Case of Discrimination*

Defendants assert that Plaintiff cannot establish the fourth element of his *prima facie* case—that he was replaced by someone outside his protected class. Defendants lack briefing on the second portion of element four which is whether Plaintiff was treated less favorably than other similarly situated employees outside his class because his permanent replacement was a Caucasian male. *McDonnell Douglas Corp.,* 411 U.S. at 802.

Plaintiff argues that Dr. Perry, who replaced Plaintiff as interim CEO for two years and is an African American, proves the fourth prong of his *prima facie* case. When analyzing the fourth element, the Court must compare plaintiff to his permanent replacement employee, as opposed to a temporary fill-in. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021). Though the Fifth Circuit has not expressly addressed the issue, it is proper to consider any replacement that is not 'called, deemed or viewed' as a temporary replacement'." *Douglas v. St. John Baptist Par. Libr. Bd. Of Control,* 2022 WL 898746 at *18 (E.D. La. Mar. 28, 2022).

In *Pizzolato v. French Mkt. Corp*, 2015 WL 5254698 at *1 (E.D. La. Sept. 9, 2015), the plaintiff, a Caucasian male, argued that he was constructively discharged and replaced with someone outside of his protected class. Plaintiff's initial replacement was an African American woman who was hired as the *interim* director. *Id.* at 4. However, the defendant hired a Caucasian male as plaintiff's *permanent* replacement. *Id.* The court held that underlying facts prove plaintiff was not replaced by someone outside his protected group because his permanent replacement was a Caucasian male. *Id.*

The question, then, is whether Dr. Perry was intended to be an interim or permanent replacement. Although Dr. Perry served as interim CEO for nearly two years, Defendants point to sworn affidavits of those directly involved in the hiring process, meeting minutes, and employment agreements, which indicate Defendants' intent when hiring Dr. Perry was that he would serve as interim CEO and nothing more.[52] Further, a prolonged job search of this type in rural Madison Parish is not unprecedented. Consequently, demonstrating that a temporary replacement was outside the protected class is insufficient to establish a *prima facie* case of discrimination when the permanent replacement is in the plaintiff's class. *Mercer v. Capitol Mgmt. & Realty, Inc.*, 242 Fed. App'x 162, 163 (5th Cir. 2007). Thus, much like *Pizzolato*, Dr. Perry was Plaintiff's interim replacement. Plaintiff cannot defeat summary judgment on this portion of element four.

However, Plaintiff can still defeat summary judgment by showing he was treated less favorably than other similarly situated individuals outside his class. To establish the fourth element of the *prima facie* case, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee,* 574 F.3d at 260. As stated by the Fifth Circuit, "nearly identical" is not the same as "identical" because "total identity would be essentially insurmountable." *Willis v. Napolitano*, 986 F.Supp.2d 738, 745 (M.D. La. 2013), *aff'd sub nom. Willis v. United States*, 576 F.App'x 340 (5th Cir. 2014). Several circumstances exist which show preferential treatment, such as when the employees being compared hold the same position or responsibilities, share the same supervisor, or had employment action decided by the same person, and have comparable history violations. *Id.*

Both parties fail to brief their argument on this point. Defendants seemingly reiterate their previous argument that Dr. Perry was not a permanent replacement and therefore, not similarly

---

[52] [Doc. Nos. 55-13,14, 35].

situated. Plaintiff reasserts that evidence shows he was treated less favorably because Dr. Perry was African American and underqualified to lead as CEO. Once more, the Court finds that Dr. Perry is not a comparator to Plaintiff. Plaintiff and Dr. Perry do not have comparable history violations, nor does Plaintiff offer evidence of other similarly situated individuals facing less harsh disciplinary actions. *See Davin v. Delta Air Lines, Inc.,* 678 F.2d 567 (5th Cir. 1982) (holding where plaintiff failed to prove that she was replaced, she must establish that the misconduct for which she was discharged was nearly identical to that engaged in by another employee outside the protected class who was retained). Thus, Plaintiff's discrimination claims appear to falter on the fourth element.

While the Court believes that Plaintiff has failed to satisfy element four under *McDonnell Douglas Corp.,* "the Fifth Circuit has acknowledged precedent for the establishment of a *prima facie* case without the traditional fourth element being completely satisfied." *Glover v. Lafayette Consol. Gov't.*, 2024 WL 3498777 at *8 (W.D. La. July 22, 2024).[53] Regardless, the Fifth Circuit has noted that the fourth element is still "certainly material to the question of discriminatory intent." *Nieto v. L & H Packing Co*., 108 F.3d 621, 624 (5th Cir. 1997). Essentially, the Court may examine the fourth prong with "an expansive understanding" and determine if Plaintiff's race was a motivating factor in his employer's decision to terminate him. *Id.* The burden of establishing a *prima facie* case is not "onerous" ... a plaintiff need only "prove by a preponderance the evidence that he was discharged from the position from which he was qualified 'under circumstances which give rise to an inference of unlawful discrimination.'" *Jones v. W. Geophysical Co. of Am*., 669 F.2d 280, 284 (5th Cir. 1982) (citing *Texas Dep't. of Cmty. Aff v. Burdine*, 450 U.S. 248 (1981)).

---

[53] Citing *Byers v. Dallas Morning News*, Inc., 209 F.3d 419, 427 (5th Cir. 2000), *Nieto v. L & H Packing Co*., 108 F.3d 621, 624 n. 7 (5th Cir. 1997)), *Hornsby v. Conoco, Inc*., 777 F.2d 243, 246–47 (5th Cir. 1985), *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

Using an expansive view, the Court finds that Plaintiff has submitted sufficient evidence to establish genuine issues of material fact concerning an inference of unlawful discrimination. First, Plaintiff testified that Washington told Plaintiff of his intention to have an African American majority board, an African American president CEO, and African American management of the hospital. Plaintiff memorialized this conversation by email to another board member. However, Washington does not recall the conversation, creating a genuine issue of material fact. To corroborate Washington's alleged wishes of having an African American board, Plaintiff testifies that after his termination, the remaining Caucasian board members were not given notice of board member renewal, which caused their terms to expire and essentially terminated their board memberships. Further evidence shows that African American members were elected after the Caucasian members' expiration, which shifted the statistics of the board. Moreover, an inference can be made as to unlawful discrimination regarding the manner of Plaintiff's removal. Plaintiff was not given sufficient notice regarding the reasoning of his removal. As evinced by the record, Plaintiff was allegedly removed for abandoning his position, yet he only missed one board meeting.

Accordingly, the Courts finds that a genuine issue of material fact can be made as to an inference of unlawful discrimination.

### B. Legitimate, Nonretaliatory Reason for Termination and Pretext

As indicated above, because Plaintiff established a *prima facie* case for unlawful discrimination, the burden shifts to Defendants to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014). Defendants "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by racial animus." *Texas Dept.*

*of Comm. Affairs,* 450 U.S. at 257. Defendants assert the reason for Plaintiff's discharge was his "intentional, insubordinate, and purposeful refusal to perform the duties of his position by failing to attend the October 14, 2022, board meeting, under circumstances reasonably deemed to be an abandonment of his position as Hospital CEO."[54] "Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Jones v. Overnite Transp. Co.,* 212 Fed.App'x 268, 275 (5th Cir. 2006); *see also Bryant v. Compass Grp. USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones.").

The decision to terminate Plaintiff based on the belief that he abandoned his position as CEO and did not attend a board meeting satisfies Defendants' burden to provide a legitimate, non-discriminatory basis for its decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining that the burden to present a non-discriminatory reason "is one of production, not persuasion; it 'can involve no credibility assessment.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). The burden therefore shifts back to Plaintiff to show that Defendants' asserted justification is pretextual for racial animus.

Because Defendants met their burden of providing a legitimate, nonretaliatory reason of termination, the presumption of discrimination disappears, and the plaintiff must then either: (1) offer sufficient evidence to create a genuine issue of material fact that the employer's proffered reason is not true, but instead is a pretext for a discriminatory purpose (the pretext alternative), or (2) demonstrate defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motive alternative)." *Rachid v. Jack In the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004). "[I]n conducting

---

[54] [Doc. No. 55-2, p. 32].

a pretext analysis, we do not engage in second-guessing of an employer's business decisions. Title VII does not require employers to make correct decisions, only nondiscriminatory decisions." *Burton v. Texas Dep't of Crim. Just.*, 584 Fed.App'x 256, 257 (5th Cir. 2014).

Defendant Hospital argues that Plaintiff's termination was due to abandonment. Defendant Hospital Board argues that Plaintiff was terminated because of his decision to terminate Nurse Ross.

The Court finds Plaintiff has provided evidence of pretext for the reasons set out above.[55] To briefly summarize, Plaintiff was aware of Washington's agenda in creating an African American majority board. And he furnishes evidence for the Court suggesting that the racial agenda was achieved after three Caucasian members were removed from office. Although the Court is not to judge the wisdom of business decisions, it is dubious that Plaintiff was removed for abandoning his position having only missed one board meeting, and Defendants provide no evidence of the manner and decision of removal happening in the past. While it is undisputed Plaintiff did miss the board meeting, the evidence given establishes a genuine issue of material fact as to whether Plaintiff's absence was, in fact, the reason for his termination.

Accordingly, Defendants' Motions for Summary Judgment are **DENIED** to the extent they seek to dismiss Plaintiff's claims under Title VII, 42 U.S.C § 1981, and LEDL.

### 3.     42 U.S.C § 1983 Against All Defendants

Plaintiff alleges that  his rights to equal protection, and substantive and procedural due process were violated because of his discharge. Defendants argue that Plaintiff has not proven individual causation under § 1983. Plaintiff states in his Complaint that "Defendants violated Petitioner's constitutional right to equal protection by discriminating against him on account of his

---

[55] *See supra*, II(B)(2)(a).

race, and by publicly smearing him as a racist as a means to provide cover for the rehabilitation of an African American hospital employee who was justifiably fired for cause."

Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983.

To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't. of Crim. Just., Institutional Div.*, 512 F.3d 157, 165 (5th Cir. 2007) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). Section 1983 and Title VII are "parallel causes of action." *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale*, 512 F.3d at 166 (citing *Briggs v. Anderson*, 796 F.2d 1009, 1019–21 (8th Cir.1986)). But Title VII and § 1983 are different in at least one important way. *See, e.g., Sims v. City of Madisonville*, 894 F.3d 632, 640-41 (5th Cir. 2018) (per curiam). "Unlike Title VII, section 1983 applies to individuals." *Sims,* 894 F.3d at at 632.

"Thus, while the *prima facie* elements of a Title VII claim may establish an *employer*'s liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of the *individual defendant* caused the harm." *Id.* at 641 (quoting *Jones v. Hoseman,* 812

Fed.App'x 235, 239 (5th Cir. 2020). Section 1983 "is not an available remedy for deprivation of a statutory right when the right itself"—in this case, the right to be free from discrimination in the workplace under Title VII— "provides an exclusive remedy for violations of its own terms." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989).

### A. Equal Protection

Plaintiff alleges Defendants terminated him because of his race. Defendants provide no evidence and little argument as to why Plaintiff's equal protection claim should be dismissed. Defendants merely lump the §1983 argument as a whole and restate that "for all reasons explained above as to why Plaintiff's claims of race-based discrimination under Title VII, [], fail, so too, does Plaintiff's claims under §1983."

Therefore, Defendants' Motions for Summary Judgment as to Plaintiff's Equal Protection claim are **DENIED WITHOUT PREJUDICE**. Defendants may file another Motion for Summary Judgment pointing to specific facts and law of why Plaintiff's equal protection claim should not proceed. Thus, **IT IS ORDERED,** that the dispositive motion deadline regarding this particular claim be extended until March 10, 2025.

### B. Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that she had a property interest/right in her employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993)). "A public employee has a property interest in her job if she has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment." *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989). The property interest in his job depends on state law, i.e.,

Louisiana law in this case. *Wallace v. Shreve Mem'l Libr.,* 79 F.3d 427, 429–30 (5th Cir. 1996). To demonstrate a property interest in his job under Louisiana law, plaintiff must show either 1) that she had a contract for a definite term, or 2) that her employer agreed to fire her only for cause. *Id.; see also Cobb v. City of Harahan,* 516 Fed.App'x 337, 341 (5th Cir.2013).

Louisiana law recognizes a presumption that an individual's employment is "at will" unless there is a specific statutory requirement, or the relationship has been altered by either express contract limiting the conditions of termination. La. Civ. Code Ann. art. 2747; *Jackson v. E. Baton Rouge Par.  Indigent Def.'s Bd.,* 353 So.2d 344, 345 (La. App. 1 Cir. 1977). Unclassified public employees may be discharged without cause. *Guillory v. St. Landry Par. Police Jury,* 802 F.2d 822, 825 (5th Cir.1986). Furthermore, a terminated at-will employee cannot claim any due process protection under the Fourteenth Amendment. *Griffith v. Louisiana,* 808 F.Supp.2d 926, 940–41 (E.D. La. 2011).

In the instant case, a clear and specific agreement exists for a continued duration and provides for termination only for cause. Plaintiff had an employment contract with Defendant Hospital that was renewed on February 28, 2021, and expired on February 28, 2023. Subsequently, though, Plaintiff was terminated on October 14, 2022. Language throughout the contract suggests that Plaintiff would only be terminated for cause, confirming that this agreement was not at-will. Further evidence suggests that the termination of Plaintiff's property interest could have been arbitrary or capricious as he was allegedly terminated for missing a singular board meeting. Additionally, the employment agreement was only between Defendant Hospital and Plaintiff. The evidence shows that Defendant Hospital Board had no contractual agreement with Plaintiff.

Accordingly, the Motions for Summary Judgment as to Plaintiff's claim for Substantive Due Process violations under **§** 1983 are **DENIED** as to Defendant Hospital and Defendant RSUI.

Further, the Motion for Summary Judgment as to Plaintiff's claim for Substantive Due Process violations under § 1983 is **GRANTED** as to Defendant Hospital Board as Defendant Hospital Board was not contractually obligated to Plaintiff under the Employment Agreement.

### C. Procedural Due Process

Plaintiff's allegation[56] is that he was terminated without requisite cause and prior notice provided for in his employment agreement with Defendant Hospital and without a hearing and/or appeal before Defendant Hospital Board. "[A] public employee who has a property interest in her job cannot be fired without due process of law." *Wallace,* 79 F.3d at 429–30. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Crowe v. Smith*, 151 F.3d 217, 230–31 (5th Cir. 1998).

In addition to Plaintiff's abrupt removal, he testified that he was not given proper notice that he would be removed from his position. Plaintiff was removed "immediately," but he was not provided with any given reason or opportunity to be heard. Plaintiff was blindly terminated and replaced on the same day at the same meeting. The minutes reflect no proper hearing or opportunity to be heard.[57] Further, Plaintiff received his termination letter in the mail, however, it, too, failed to provide Plaintiff with a reason for his termination.

Accordingly, Defendants' Motions for Summary Judgment as to Plaintiff's claim for Procedural Due Process violations under § 1983 are **DENIED.**

**3.    Bad Faith Breach of Contract Under Louisiana Civil Code Article 1997 Against Defendant Hospital and Defendant Hospital Board**

---

[56] Plaintiff does not allege he was deprived of a liberty interest.
[57] [Doc. No. 78-30, p. 2].

Defendants argue that Plaintiff's own substantial breach of the employment agreement serves as an affirmative defense to the breach of contract claim.[58] However, Defendants *only* assert that Plaintiff's bad faith breach of contract claim should be dismissed and *does not* discuss any basic breach of contract claim. Pursuant to La. Civil Code Article 1997, "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Official Revision Comment (B) to Article 1997 clarifies that "bad faith" is when "an obligor intentionally and maliciously fails to perform his obligation." Courts should not "examine a party's good faith or bad faith unless and until it finds that the party has failed to perform an obligation, from which the obligee has sustained damages." *Hairston v. Sun Belt Conf. Inc.*, 640 F.Supp.3d 580, 589 (E.D. La. 2022) (*relying on Lamar Contractors, Inc. v. Kacco, Inc.*, 189 So. 3d 394 (La. 2016)) (cleaned up).

Because Defendants' Motions do not request the Court to first find that an obligation was breached, the Court cannot, at this juncture, make a determination as to the bad faith breach of contract claim unless and until it has found that a party has breached the contract. Thus, the Motions for Summary Judgment as to bad faith breach of contract are **DENIED**.

### 4.  Intentional Infliction of Emotional Distress ("IIED") Against Defendant Hospital and Defendant Hospital Board

Plaintiff asserts that the Defendants' race-based tactics to terminate his employment constitute extreme and outrageous acts under intentional infliction of emotional distress ("IIED").[59] Defendants argue that Plaintiff has no evidence to support this claim because he has not sought any counseling or treatment in connection with the employment action taken and there is "no evidence of any pattern of deliberate, repeated harassment for a period of time, and the

---

[58] [Doc. No. 55-2, p. 12].
[59] [Doc. No. 78-, p. 37].

alleged branding of the plaintiff as a racist emanated from non-employer, non-party individuals, unrelated to the hospital, to which there is no evidence of any conspiracy or coordinated actions with defendants."[60]

A plaintiff seeking to recover for IIED must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *King v. Phelps Dunbar, L.L.P*, 743 So. 2d 181, 185–86 (La. 1999) (internal citations omitted). The defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. However, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*.

Here, Plaintiff has failed to create a genuine issue of material fact as to the merits of his IIED claims. He has presented no evidence demonstrating extreme or outrageous conduct nor has he provided any evidence that he suffered severe emotional distress. This case lacks behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Ulmer v. Frisard*, 694 So.2d 1046, 1049 (La. App. 5 Cir. 4/29/97).

Accordingly, Defendants' Motions for Summary Judgment as to Plaintiff's claim for IIED are **GRANTED** and Plaintiff's claim is hereby **DISMISSED WITH PREJUDICE.**

> **5.    Whistleblower/Retaliation under La. R.S. 23:967 Against Defendant Hospital and Defendant Hospital Board**

---

[60] [Doc. No.55-2, p. 43].

The protection extended by Louisiana's Whistleblower Statue, § 23:967 covers reprisal for actions not specifically addressed by Title VII. The triggering events of a claim under § 23:967 are outlined in subsection A of the statute. Section 23:967 provides in pertinent part:

> A. An employer shall not reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
> (1) Discloses or threatens to disclose a workplace act or practice that is violation of state law.
> (2) provides information to or terrifies before any public body conducting an investigation, hearing, or inquiry into any violations of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
> B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
> C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
> (1) Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

For an employee to establish a claim under La. R.S. 23:967, he must prove that his employer committed an actual violation of state law. *Accardo v. Louisiana Health Servs. & Indem. Co.*, 943 So.2d 381 (La. App. 1 Cir. 2006).[61]

Defendants argue that Plaintiff's claim cannot survive summary judgment because Nurse Ross was not Plaintiff's employer. Plaintiff alleges that Defendants terminated him for reporting

---

[61] *See Hale v. Touro Infirmary*, 886 So.2d 1210 (La. App. 4 Cir. 11/30/04) *writ denied*, 896 So.2d 1036 (La. 2005); *Puig v. Greater New Orleans Expressway Commission*, 772 So.2d 842 (La. App. 5 Cir. 3/9/01), *writ denied*, 786 So.2d 731 (La. 2001).

the illegal activity of his co-worker, Nurse Ross. Plaintiff fails to include arguments as to why summary judgment should not be granted on this claim. In any event, even if Plaintiff had briefed his argument on this point, it would likely not have passed the summary judgment threshold because the identity of the alleged wrongdoer (Nurse Ross) falls outside the protection of the statute as Nurse Ross was not Plaintiff's employer.

Accordingly, Defendants' Motions seeking summary judgment on Plaintiff's Whistleblower/Retaliation claim under La. R.S. 23:967 are hereby **GRANTED,** and the claim is **DISMISSED WITH PREJUDICE.**

**6.     42 U.S.C § 1985(3) Conspiracy Against All Defendants**

Defendants assert Plaintiff lacks evidence of an agreement between Defendants and any other party to conspire against Plaintiff on the basis of his race. Plaintiff asserts that he has produced evidence to support his conspiracy claims against Defendants.

42 U.S.C § 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages

27

occasioned by such injury or deprivation, against any one or more
of the conspirators.

To state a cognizable claim under § 1985(3), Plaintiff must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)); *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 833 (1983); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68 (1993).

Here, Plaintiff provides evidence to defeat Defendants' Motion as to a possible conspiracy between and among Defendant Hospital Board. Specifically, it is up to the factfinder as to whether Mitchell and Washington, two board members, conspired against Plaintiff to terminate him and other White board members in an effort to gain an African American majority board. Plaintiff testified that he was threatened by Washington when he told Plaintiff, "we intend to have a black majority board; we intend to have a black president CEO; and we intend to have black management of this hospital."[62] Washington recalled having a conversation with Plaintiff but does not recall saying his intentions, which creates a genuine issue of material fact. Moreover, Mitchell attempted to remove Plaintiff as CEO when he sent an email regarding removal on September 21, 2022. This fact is significant because Plaintiff was allegedly removed from his position due to missing an October meeting and abandoning his position. In deposition, however, Mitchell admitted that the September attempted termination was because of Plaintiff's actions with Nurse Ross.

Further, after Plaintiff's termination, two Caucasian board members were not reappointed because they did not receive notice about submitting a written request for reappointment. What is doubtful is that Mitchell and Washington were quietly advanced notice of resubmission. This fact

---

[62] [Doc. No. 78-6, p. 13].

bolsters a genuine issue as to Mitchell and Washington's conspiracy of gaining an African American majority of the board.

While a jury could find that a conspiracy existed among Defendant Hospital Board[63] members, the Motions for Summary Judgment as to this issue are **DENIED**. However, the Court finds no genuine issue of material fact as to a conspiracy between Defendant Hospital, by itself, or with Defendant Board; thus, to the extent Defendant Hospital asserts a Motion for Summary Judgment as to Plaintiff's Conspiracy claim, the Motion is **GRANTED.**

### 7.    Civil Conspiracy Claim against All Defendants

Defendants assert Plaintiff cannot prove that an agreement existed with Defendants and any other party to violate the Plaintiff's civil rights in the form of discharge on the basis of his race. In Opposition, Plaintiff reiterates that all Defendants conspired to deprive him of his civil rights and that evidence shows a conspiracy existed.

Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). In order to prove a conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result. *Jeff Mercer, LLC v. State through Dep't of Transp. & Dev.*, 222 So. 3d 1017, 1024 (La. App. 2 Cir. 6/7/17). "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So. 3d 670, 676 (La. App. 4 Cir. 10/1/14).

---

[63] Because Defendant Hospital Board is a part of Defendant Hospital, the Motion is also **DENIED** as to RSUI.

The Court sees no need to flesh out this claim element by element for the reasons stated in the Title VII, LEDL, 42 U.S.C § 1983, and 42 U.S.C § 1985 sections above. Because the Motions for Summary Judgment were denied on those claims, so too is this claim denied.

    **8.**    **Attorney Fees and Cost Under 42 U.S.C. § 1988 Against All Defendants**

Because the Court has denied the Motion for Summary Judgment regarding § 1981, § 1983, and § 1985 claims, the Court denies Defendants' Motions on this claim as well.

## III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motions for Summary Judgment [Doc. Nos. 55, 64] are **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motions are **GRANTED** to the extent they seek to dismiss Plaintiff's IIED and whistleblower/retaliation claims as to all Defendants.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion [Doc. No. 55] is **GRANTED** as to substantive due process claims against Defendant Hospital Board.

**IT IS FURTHER ORDERED** that the Motions are **DENIED** to the extent they seek to dismiss Title VII, LEDL, § 1981, § 1983 equal protection, procedural due process, bad faith, § 1985 conspiracy, civil conspiracy, and § 1988 claims against all Defendants.

**IT IS FURTHER ORDERED** that the Motions are **DENIED** to the extent they seek to dismiss substantive due process claims against Defendant Hospital and RSUI.

**IT IS FURTHER ORDERED** that the dispositive motion deadline regarding the equal protection claim is hereby extended until March 10, 2025.

MONROE, LOUISIANA, this 4th day of February, 2025.

_____
Terry A. Doughty
United States District Judge