UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

THEODORE TOPOLEWSKI                    CASE NO.  3:23-CV-00258

VERSUS                                 JUDGE TERRY A. DOUGHTY

POLICE JURY ET AL                      MAG. JUDGE KAYLA D. MCCLUSKY

<u>MEMORANDUM RULING</u>

Pending before the Court is a Motion for Summary Judgment [Doc. No. 57] filed by Defendant Madison Parish Police Jury ("MPPJ" or "Defendant"). Plaintiff, Theodore Topolewski ("Topolewski" or "Plaintiff"), filed an Opposition [Doc. No. 78], and Defendant filed a Reply [Doc. No.  82].

For the reasons set forth herein, Defendant's Motion is **GRANTED.**

## I.    BACKGROUND AND PROCEDURAL HISTORY

Topolewski, a Caucasian male, filed the instant employment suit against Defendant on February 27, 2023.[1] Topolewski filed a first amended and supplemental complaint and a second amended and supplement complaint.[2] Topolewski asserts several causes of action sounding in race-based discrimination, contractual discrimination, equal protection, substantive due process, § 1985 conspiracy, and civil conspiracy.

The Madison Parish Service District Hospital was created by the Madison Parish Police Jury, per the authority granted by La. R.S. § 46:1051, to operate the Madison Parish Hospital in Tallulah, Louisiana. The Hospital Service District, a political subdivision of the State of Louisiana is governed by a board of five commissioners (Hospital Board), each appointed by the Police Jury.

---

[1] [Doc. No. 1].
[2] [Doc. No. 10, 19].

1

On April 7, 2014, Plaintiff and the Hospital entered into an employment agreement.[3] The employment agreement was extended several years. Plaintiff served as Director/Chief Executive Officer ("CEO") of the Hospital until his discharge on October 14, 2022.[4] The employment agreement in effect at the time of Plaintiff's termination was set to expire on February 28, 2023.[5] Although the MPPJ has no contractual obligation to Plaintiff, by statute, the Hospital Board members are elected to serve by a majority vote of the Police Jury.[6] Further, one of the MPPJ's duties is to fill vacant spots on the Hospital Board.[7] Plaintiff acknowledges through his deposition that "the Board has the sole responsibility of . . . firing the president; not the Police Jury."[8] Plaintiff further admits that he entered a contract "with the hospital," at no point did negotiations include the MPPJ, and at no point did the Police Jury have to approve his contract.[9] Moreover, Plaintiff never had any kind of relationship with the MPPJ in his capacity as CEO except to update them as to the hospital's construction.[10]

On August 3, 2022, the Hospital's Chief Financial Officer ("CFO"), Robert Laurents ("Laurents"), informed Plaintiff that Latayatcha Ross ("Nurse Ross"), a licensed nurse practitioner employed by the Hospital, was falsifying medical records to obtain a contractual bonus.[11] Plaintiff's initial response to Laurents was to "let it go."[12] One day later, on August 4, 2022, Laurents and the business office manager informed Plaintiff that Nurse Ross falsified over one hundred and twenty (120) records.[13] Plaintiff requested samples of the records which allegedly

---

[3] [Doc. No. 78-2].
[4] [Doc. No. 78-3, p. 3].
[5] [Doc. No. 78-2].
[6] La. R.S. § 46:1053.
[7] [*Id*.].
[8] [Doc. No. 57-5, p. 25].
[9] [*Id*. at 24, 25].
[10] [*Id*. at 27].
[11] [Doc. No. 57-5, p. 147].
[12] [Doc. No. 78-6, p. 3].
[13] [*Id*.].

showed their incompleteness.[14] Plaintiff contacted the Hospital's outside counsel, Sullivan Stolier Schulze, LLC ("Sullivan Stolier"), to request an internal investigation.[15] After conducting the internal investigation, Sullivan Stolier informed Plaintiff to terminate Nurse Ross immediately.[16] On August 9, 2022, Plaintiff called a meeting with Hospital Chief Medical Officer – Dr. Lawrence Chenier, Nurse Ross' collaborating physician – Dr. Donald Perry, and Nurse Ross' administrative boss – Stacey Sandidge, to brief them of the situation.[17] The report was given to the Hospital on August 25, 2022, and corroborates Plaintiff's testimony.[18] The report also notes that immediate termination was warranted under her contract.[19]

On August 25, 2022, Plaintiff emailed a copy of the report to the Hospital Board.[20] At that time, the Hospital Board was made up of five members: Mary Trichell ("Trichell") – Chair, Thomas Leoty ("Leoty") – Vice Chair, Cole Norris ("Norris"), Calvin Washington ("Washington"), and Thomas Mitchell ("Mitchell"). [21] Trichell, Leoty, and Norris are Caucasian, and Washington and Thomas are African American. Plaintiff asked Washington his thoughts on the report, and Washington said that the report was "false."[22] Nurse Ross reportedly "had a very nice personality," "her demeanor was very, very nice," and "she seemed to be a great person."[23] Plaintiff declared in his deposition that in addition to accusing Sullivan Stolier of making a false report, Washington used the word "racial" and clearly stated his intentions of gaining an African American majority board.[24] Plaintiff memorialized the conversation in an email to Trichell, despite

---

[14] [Doc. No. 78-6, p. 4].
[15] [Doc. No. 57-5].
[16] [Doc. No. 78-6, p. 4].
[17] [Doc. No. 78-6, p. 5].
[18] [Doc. No. 78-7, p. 1].
[19] [Id.].
[20] [Doc. No. 78-8].
[21] [Doc. No. 78-8, p. 1].
[22] [Doc. No. 78-12, p. 10].
[23] [Id. at p. 32].
[24] [Doc. No. 78-9].

Washington testifying that he does not recall saying such.[25] Plaintiff asked Trichell if she knew Jane Sanders ("Sanders"), president of the MPPJ and if she would speak to Sanders about the Nurse Ross incident.[26] According to Trichell, she and Sanders had a long discussion at Sanders' house about Nurse Ross.[27] Sanders testified that it was "not sitting down for two hours at my house, no."[28]

On or around September 19, 2022, the MPPJ allowed Nurse Ross to speak at a meeting and "tell her side of the story."[29] Plaintiff was also invited to "tell his side of the story," but he did not attend.[30] After Nurse Ross spoke, the MPPJ informed Nurse Ross that it does not control the Hospital's employment decisions, and thus could not redress her concerns.[31]

On October 10, 2022, the MPPJ convened its regular meeting and voted to dismiss board members Trichell and Leoty as their terms had allegedly expired.[32] The MPPJ received letters from Mitchell and Washington asking to be reappointed but received no letters from Trichell or Leoty.[33] Plaintiff submits that the manner of reappointment was suspicious because, before the dismissal of Trichell and Leoty, Mitchell requested a schedule of the board members' term dates from the MPPJ secretary, Margaret Drew ("Drew"), as opposed to the hospital board secretary, Whitaker.[34] Further, the MPPJ agenda for the October 10, 2022 meeting allegedly failed to adhere to the specific notice requirements regarding dismissal and appointee of members. Both Trichell and Leoty state in their deposition that they did not have any warning or notice that they had to submit

---

[25] [Doc. Nos. 78-9; 78-12, p. 17-19].
[26] [Doc. No. 78-10, p. 6].
[27] [*Id*.].
[28] [Doc. No. 57-9, p. 46].
[29] [Doc. No. 57-3].
[30] [*Id*.].
[31] [*Id*.].
[32] [Doc. No. 57-9].
[33] [*Id*.].
[34] [Doc. No. 78-23].

written requests to the police jury to remain on the hospital board.[35]  The MPPJ unanimously voted to re-appoint both Mitchell and Washington, changing the hospital board from a Caucasian majority to an African American majority.[36]

On October 12, 2022, the amended board issued a notice of a special meeting to take place on October 14, 2022.[37] The special meeting's agenda included the following matters: "Board hearing for licensed contractor employee; Removal of Officers for cause; Salary reviews; Investigations into all personnel-related matters."[38]

On October 12, 2022, Plaintiff forwarded the email regarding the board's agenda notice to an attorney from Sullivan Stolier and claimed that he would not attend and "hopefully they will do me a favor and terminate my contract."[39] Plaintiff testified that he did not attend the meeting because the board was illegally constituted and called by no officers.[40] Further, Plaintiff declared that he feared for his safety due to the community's reactions regarding Nurse Ross' termination.[41] Jeanette Phillips, who was a housekeeper of the Hospital, testified in an affidavit that she observed Plaintiff on the day of his termination, "making trips back and forth, moving his things out of his office. He made trips out of the hospital, moving boxes and his things."[42] This allegedly led the Hospital Board to believe that Plaintiff abandoned his position.[43] Plaintiff presents deposition testimony that he removed his belongings because he was suspicious of the Hospital Board's intentions to terminate him.[44]

---

[35] [Doc. Nos. 78-10, p. 9; 78-26, p. 2].
[36] [Doc. No. 57-9].
[37] [Doc. No. 78-22].
[38] [Doc. No. 78-29].
[39] [Doc. No. 55-32].
[40] [Doc. No. 78-6, pp. 16-18].
[41] [*Id*.].
[42] [Doc. No. 55-15].
[43] [Doc. No. 55-2, p. 18].
[44] [Doc. No. 55-6, p. 22].

Finally, on October 14, 2022, the Hospital Board voted to remove Plaintiff as the Hospital's CEO, effective immediately.[45] Plaintiff received the termination notice on October 17, 2022, with no reasoning provided.[46] Additionally, the Hospital Board reinstated Nurse Ross due to the absence of proof regarding the reason for her termination and hired Williams, Nurse Ross' attorney, to a newly created position at the Hospital.[47] Further, Doctor Donald Perry ("Dr. Perry"), an African American, was appointed as interim CEO and remained as such for two (2) years.[48]  On February 1, 2024, the Hospital hired permanent CEO, William Ermann ("Ermann"), a Caucasian male.

On July 12, 2024, Defendant filed the pending Motion moving the Court to dismiss Plaintiff's claims against Defendant as Plaintiff presents no evidence of any wrongdoing.[49] Plaintiff opposed.[50] Defendant also moves the Court to award it attorney's fees under § 1988 and other costs under Federal Rule of Civil Procedure 54(d)(1). Plaintiff does not offer a response.

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

Under FED. R. CIV. P. 56(a), the court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when

---

[45] [Doc. No. 78-30].
[46] [Doc. No. 78-31].
[47] [*Id*.].
[48] [*Id*.].
[49] [Doc. No. 57].
[50] [Doc. No. 78].

proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence*." Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr¬McGee Oil and Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Analysis**

**1.    Equal Protection and Contractual Discrimination**

Plaintiff alleges that the MPPJ subjected him to racial discrimination and denied him equal protection under § 1983 and contractual discrimination under § 1981.[51] Defendant argues Plaintiff's employment claims against it should be dismissed because the MPPJ did not employ nor terminate Plaintiff.[52]

Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983.

To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't. of Crim. Just., Institutional Div.*, 512 F.3d 157, 165 (5th Cir. 2007) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). Title VII prohibits employers from discriminating against employees on several grounds, including race. 42 U.S.C.§ 2000.  Section 1983 and Title VII are "parallel causes of action." *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale*, 512 F.3d at 166 (*citing Briggs v. Anderson*, 796 F.2d 1009, 1019–21 (8th Cir.1986)).

---

[51] [Doc. No. 1, ¶ 26].
[52] [Doc. No. 57-2, p. 17].

The Court agrees with Defendant that Plaintiff was hired by the Hospital and not the MPPJ. Plaintiff, too, seemingly agrees with this contention and acknowledges that his contract was with the Hospital and not the MPPJ. Plaintiff testified that the MPPJ "had nothing to do with the contract" and that the Hospital Board "ha[d] the sole responsibility of hiring and firing the president, not; not the Police Jury."[53] Further, Defendant submits evidence that members of the Hospital Board testified that the MPPJ was not involved with Plaintiff's termination. Plaintiff acknowledges that the MPPJ did not influence the Hospital's decision to terminate Plaintiff.

In *McCoy v. Detention Center Claiborne Parish*, 2008 WL 1819927 (W.D. La. 2008), the Court found there was no employment relationship between McCoy and the police jury. Therefore, it was clearly established that the police jury could not be held liable for employment discrimination claims and granted summary judgment in the police jury's favor. The Court finds the same here. Because the MPPJ was not Plaintiff's employer—nor had any influence over Plaintiff's termination, the MPPJ is not liable under the Equal Protection Clause or § 1981. Because Equal Protection and § 1981 actions are all parallel to Title VII and thus require an employer-employee relationship, the Court sees no need to analyze further under the *McDonnell Douglas Corp*. analysis. Therefore, Defendant's Motion for Summary Judgment regarding Plaintiff's Equal Protection and § 1981 claims is **GRANTED**.

## 2. Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that she had a property interest/right in her employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993). "A public employee

---

[53] [Doc. No. 57-5, pp. 24-26].

has a property interest in her job if she has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment." *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989). The property interest in his job depends on state law, i.e., Louisiana law in this case. *Wallace v. Shreve Mem'l Libr.,* 79 F.3d 427, 429–30 (5th Cir. 1996). To demonstrate a property interest in his job under Louisiana law, the plaintiff must show either (1) that she had a contract for a definite term, or (2) that her employer agreed to fire her only for cause. *Id.; see also Cobb v. City of Harahan*, 516 Fed. App'x 337, 341 (5th Cir.2013).

Louisiana law recognizes a presumption that an individual's employment is "at will" unless there is a specific statutory requirement, or the relationship has been altered by either express contract limiting the conditions of termination. La. Civ. Code Ann. art. 2747; *Jackson v. E. Baton Rouge Par. Indigent Def.'s Bd.*, 353 So.2d 344, 345 (La. App. 1 Cir. 1977).

Again, Plaintiff offers no evidence that creates a genuine issue of material fact regarding whether the MPPJ had any contractual obligation to Plaintiff. On the contrary, Plaintiff testified several times throughout his deposition that the MPPJ was not his employer and that the MPPJ had nothing to do with his contract. Plaintiff also testified that he believed the Hospital Board, not the MPPJ, "ha[d] the sole responsibility of hiring and firing the president, not; not the Police Jury."[54] Thus, Plaintiff cannot satisfy element two of this claim because the MPPJ was not his employer, nor did the MPPJ terminate him. Therefore, Defendant's Motion on this issue is **GRANTED**.

---

[54] [Doc. No. 57-5, p. 25].

**3.      42 U.S.C § 1985(3) Conspiracy**

Defendant asserts Plaintiff has not and cannot prove any conspiracy to deprive Plaintiff of his equal protection or due process. Plaintiff asserts that he has produced evidence to support his conspiracy claims against Defendants. He has not.

42 U.S.C § 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a cognizable claim under § 1985(3), Plaintiff must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001) (*citing Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)); *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 833 (1983); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68 (1993).

11

Once more, Plaintiff produces no evidence of a conspiracy between the MPPJ and the Hospital regarding unlawful discrimination. Plaintiff argues that the MPPJ conspired with the Hospital and Hospital Board to terminate him based on his race and regain an African American majority board—and such was successful as the MPPJ appointed individuals to fill vacancies on the Hospital Board. Plaintiff further argues that conspiracy is shown because the MPPJ allowed Nurse Ross to speak at a police jury meeting.

The Court finds no genuine issue of material fact as to a conspiracy between the MPPJ, by itself, or with any other named defendant. The MPPJ was required, by law, to fill vacancies on the Board.[55] While there is evidence that Washington and Mitchell submitted reappointment letters to the MPPJ, there is no evidence that the MPPJ was "in" on the discreet and suspicious request to be reappointed. The question of discrimination lies among and between the Hospital and Hospital Board; there is no evidence that the MPPJ was part of or knew of the conspiracy to gain an African American board or terminate Plaintiff because he did not fit the other defendants' agenda. Further, Defendant submits, and Plaintiff admits through his deposition that he, too, was offered a chance to speak at the same police jury meeting that Nurse Ross spoke at. However, he decided it was not in his best interest to go to the meeting. Nonetheless, Plaintiff acknowledges that the MPPJ made no comments against or regarding Plaintiff at that meeting. Thus, to the extent the MPPJ moves for summary judgment as to Plaintiff's § 1985 Conspiracy claims, the Motion is **GRANTED.**

### 4.    Civil Conspiracy Claim

Defendant maintains Plaintiff cannot prove that a conspiracy existed. In Opposition, Plaintiff states that a reasonable jury could find evidence of an agreement to remove Plaintiff from CEO.

---

[55] La. R.S §46:1053.

Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). In order to prove a conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result. *Jeff Mercer, LLC v. State through Dep't of Transp. & Dev.*, 222 So. 3d 1017, 1024 (La. App. 2 Cir. 6/7/17). "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So. 3d 670, 676 (La. App. 4 Cir. 10/1/14).

The Court sees no need to flesh out this claim element by element for the reasons stated under § 1985 Conspiracy. *See* Section II(B)(3), *supra*. Simply put, there is no evidence that the MPPJ agreed with the Hospital or the Hospital Board to commit an illegal or tortious act against him. The evidence that Sanders denied the time and location of meeting Trichell regarding Nurse Ross' incident does not pass the summary judgment threshold in bolstering the claim that the MPPJ terminated Plaintiff because he was Caucasian. Further, an email regarding the meeting agenda from Mitchell to Sanders is of no significance here. Sanders was president of the MPPJ; thus, she was entitled to the meeting agenda. The fact that Mitchell then forwarded the email to Nurse Ross' attorney, while suspicious in its own right, has nothing to do with the MPPJ.

Therefore, for all reasons set out above and in this section, the Motion for Summary Judgment as to Plaintiff's Civil Conspiracy claims is **GRANTED.**

5.    **Attorney Fees under 42 U.S.C 1988(b)**

Defendant states that Plaintiff's claims lack an evidentiary basis, so Defendant is entitled to an award of attorney's fees incurred for defending these claims. Plaintiff offers no argument to the contrary.

"Under § 1988, a court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" for proceedings in vindication of civil rights. 42 U.S.C. § 1988. A prevailing defendant is entitled to fees "only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Walker v. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999). The district court will review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful. *Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir.1981). Factors important to frivolity determinations are (1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial. *See EEOC v. Kimhrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir.1983). These factors are helpful "guideposts," but frivolousness must be judged on a case-by-case basis. *Doe v. Silsbee ISD*, 440 Fed. App'x 421, 425 (5th Cir. 2011). The ultimate result of a civil rights action cannot be the basis for an award of attorney's fees to the successful defendant. *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1141 (5th Cir.1983); *Stenseth v. Greater Fort Worth & Tarrant County Community Action Agency,* 673 F.2d 842, 849 (5th Cir.1982); *Jones,* 656 F.2d at 1145.

The Court finds that there were some credible suspicions to proceed on Plaintiff's claims with colorable merit, even though the evidence regarding the MPPJ is slight. While the Court cannot say that Plaintiff's race and termination were linked to the MPPJ, neither can the Court say that Plaintiff's suspicions regarding his superiors were without total merit. "Even when the law or

14

the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Cook v. Somerville and Somerville, Ltd*., 1997 WL 13728 (E.D. La. 1997) (*quoting White v. South Park Indep. Sch. Dist*., 693 F.2d 1127, 1141 (5th Cir. 1983)). "When a plaintiff presents some credible evidence to prove his claim, he has shown that his case has colorable merit; consequently, the prevailing defendant is not entitled to attorney fees." *Kador v. City of New Roads*, 2011 WL 2297815 (M.D. La. 2011) (*citing Vaughner v. F.J. Pulito*, 804 F.2d 873, 878 (5th Cir.1986); *Lopez v. Aransas County Sch. Dist*., 570 F.2d 541, 544–45 (5th Cir.1978)).

Thus, to the extent Defendant request an award of attorney fees, its request is **DENIED.**

### 6.    Federal Rules of Civil Procedure 54(d)(1)

Defendant argues that it incurred $7,051.42 in deposition costs for which they are entitled to be paid. Plaintiff offers no argument in Opposition. Federal Rule of Civil Procedure 54(d)(1) provides, in relevant part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. *See* FRCP 54(d)(1). In determining whether to award costs related to depositions, the Court "has great discretion to tax the cost of a deposition if it finds that all or any part of the deposition was necessarily obtained for use in the case." *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1553 (5th Cir.1984) (cleaned up).

The Court finds that Defendant shall be awarded $3,627.85 for deposition costs. The Court awards this amount by adding the "Court Reporter – Depositions" for 11/1423 ($867.20), 11/120/2023 ($601.25), 12/11/2023 ($722.05), and 03/13/2023 ($687.35) and "Deposition Fee" on 06/25/2024 ($750.00).[56]

---

[56] [Doc. No. 57-15].

### III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment [Doc. No. 57] is **GRANTED** as to Plaintiff's claim against Defendant regarding Equal Protection, Substantive Due Process, § 1981, § 1985 conspiracy, and civil conspiracy.

**IT IS FURTHER ORDERED** that Defendant's request of an award of attorney fees under § 1988 is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request for an award of costs is **GRANTED**, thereby awarding costs in the amount of $3,627.85.

MONROE, LOUISIANA, this 12th day of February, 2025.

Terry A. Doughty
United States District Judge